# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA LEAYM, | ) 1:09cv01986 DLB |
| | ) |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Lisa Leaym ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application in June 2006, alleging disability since January 30, 2003, due to congenital bone disease, an ulcer, poor speech and back, hip, head and elbow pain. AR 83, 124-137. After her application was denied initially and on reconsideration, Plaintiff requested a

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

hearing before an Administrative Law Judge ("ALJ"). AR 83-86, 92, 95-99. ALJ Patricia Flierl held a hearing on May 14, 2008, and denied benefits on September 11, 2008. AR 10-20, 22- 58. The Appeals Council denied review on September 24, 2009. AR 1-3.

Hearing Testimony

ALJ Flierl held a hearing on May 14, 2008, in Fresno, California. Plaintiff appeared with her attorney, Melissa Proudian. Vocational expert ("VE") Cheryl Chandler also appeared and testified. AR 22.

Plaintiff testified that she was 46 years old at the time of the hearing. She was 5 feet, 10 inches tall and weighed about 230 pounds. AR 25. Plaintiff is not married and has four children that do not live with her. She lives with her friend, Bob. AR 26. Plaintiff has a driver's license but does not drive much because of gas prices. AR 27. She drives back and forth to Fresno City College, from Chowchilla, daily, though Bob has to drive when her arms or legs get tired. AR 28.

Plaintiff graduated high school and has college units. She cannot get her two year degree in accounting because her anxiety causes problems with test taking and her pain causes problems with concentration and memory. Plaintiff has been unable to pass the final exams for the past eight years. AR 30. Plaintiff is currently taking classes but will be unable to continue because of a lack of financial aide. AR 31. Plaintiff is in the Disabled Student Program at Fresno City College, and even though she gets additional time on tests, she is still unable to pass them. AR 32.

Plaintiff last worked as a cashier at Burlington Coat Factory from 1996 to 1999. AR 33. Plaintiff had to quit the position because of swelling in her legs and a varicose ulcer. AR 34. She did not believe that she could perform any full-time work because of restless legs and constant pain in her head. AR 35. Plaintiff has had the head pain for the past five years and the pain medication does not "totally" relieve it. AR 37-38. She also testified that she has pain in her hands and wrists that prevents her from typing or writing for more than 5 or 10 minutes at a time. AR 35. Plaintiff has an anxiety disorder and ADHD. AR 35-36. She gets drowsy at about two or three in the afternoon, though she wasn't sure if this was a side effect of the medication or

because she is tired from not sleeping well.  AR 39.  About 4 or 5 times during the day, for 20 minutes, she leans back in a chair so that her legs "can go out flat."  AR 39.

Plaintiff thought that she could focus for about 15 minutes on something before needing to take a break for 20 to 30 minutes.  AR 41

Plaintiff explained that the swelling in her legs is worse and that she also has back and hip pain.  Plaintiff also has problems with frequent urination and stomach pain.  AR 36.  She is also being treated for anxiety and sees a doctor as well as a school counselor.  AR 42.  She also has "nervous shaking" everyday.  AR 42.  Plaintiff has not sought out specific psychiatric or mental health treatment.  AR 46.

When questioned by her attorney, Plaintiff testified that she also takes medication for high blood pressure, though her blood pressure continues to fluctuate.  AR 47.  She thought that she could stand for about 5 minutes and could walk less than a block.  Plaintiff has a permanent disabled parking permit.  AR 49.  She thought that she could lift 5 pounds or less and could sit for 30 minutes to an hour.  AR 50.  She does not cook, though she could get a bowl of cereal.  Plaintiff can wipe off a shelf, but does not do any heavy cleaning.  AR 52-53.  She can put clothes in the washer and can go grocery shopping if she doesn't have to carry anything and can stay on one side of the store.  AR 53.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work history.  This person would be limited to light work and simple, repetitive tasks with no public contact.  The VE testified that this person could not perform Plaintiff's past relevant work but could perform roughly 13,000 jobs in California at the unskilled level.  AR 54-55.

For the second hypothetical, the ALJ asked the VE to assume that this person was limited to sedentary work and simple, repetitive tasks with no public contact.  The VE testified that this person could not perform Plaintiff's past relevant work but could perform about 2,000 in California at the unskilled level.  AR 55.

1    For the third hypothetical, the ALJ asked the VE to assume that this person could perform
2 simple, repetitive tasks with no public contact. This person could not concentrate in two-hour
3 increments. The VE testified that this person could not perform any work. AR 56.

4    Medical Record

5    An MRI of Plaintiff's brain performed on November 10, 2003, revealed diffuse
6 generalized cerebral atrophy with prominent cerebellar atrophy and nonspecific white matter
7 changes. AR 303.

8    On September 15, 2005, Plaintiff saw Scott Ahles, M.D., a psychiatrist at California State
9 University, Fresno. AR 206. Plaintiff reported that her summer was uneventful and that she did
10 not do well last semester. Plaintiff explained that she had a lot of problems with exams because
11 of anxiety and because she just cannot remember the material. She also reported that she had
12 testing performed over the summer to see if she had a learning disability. Ritalin did not help
13 Plaintiff's ADD and Fluoxetine did not help her anxiety. Dr. Ahles was not sure where to go in
14 terms of medication intervention and decided to hold off on medication for the present time. He
15 was also going to find out the results of the testing. Dr. Ahles diagnosed possible ADHD,
16 headaches and anxiety disorder, not otherwise specified. He instructed Plaintiff to follow-up in
17 two weeks. AR 206.

18    Plaintiff failed to attend her appointment with Dr. Ahles on September 29, 2005. AR
19 205.

20    From May 2006 through August 2006, Plaintiff was treated for headaches, acid reflux,
21 high blood pressure, eye pain, stomach pain and back pain. AR 253-259.

22    On September 2, 2006, Plaintiff saw Rustom Damania, M.D., for a consultive physical
23 examination. Plaintiff complained of constant headaches for the past three years, occasional
24 blurry vision, swollen ankles, pain in both hips and chronic low back pain. She was taking
25 Neurontin, Zantac, Lasix, Levodopa, Elavil, Tramadol and Prevacid. On examination, Plaintiff
26 was obese. Her field of vision was normal. Plaintiff had a red, pruritic type of rash on the left
27 lower extremity, which had been there for several years. She also had varicose veins in both
28 legs, right worse than left. Station and gait were within normal limits and she did not use an

assistive device. Right and left dorsalis pulses were absent. Straight leg raising, Tinel's sign and Phalen's signs were negative. Plaintiff had no sensory impairment and motor strength was 5 out of 5. Reflexes were within normal limits and cranial nerves were intact. AR 207-209.

Dr. Damania diagnosed obesity, chronic daily headaches, status post thoracic aortic aneurysm repair in 1997, varicose veins, right worse than left, and an area of either eczema or chronic dermatitis in the left lower leg associated with 1+ pedal edema in both legs, may be related to some chronic vein insufficiency. He opined that Plaintiff should be able to stand or walk for about six hours. She had no restrictions on sitting. Plaintiff could lift and carry 10 pounds frequently, 20 pounds occasionally. There was no objective evidence to support any further limitations. AR 209.

On September 12, 2006, State Agency physician R. D. Fast, M.D., completed a Physical Residual Functional Capacity Assessment form. Dr. Fast opined that Plaintiff could lift 25 pounds frequently, 50 pounds occasionally. She could stand and/or walk about six hours and could sit for about six hours. Plaintiff could frequently climb ramps and stairs but could never climb ladders, ropes and scaffolds. She could frequently balance, stoop, kneel, crouch and crawl. Plaintiff had to avoid concentrated exposure to noise and hazards. AR 213-217.

On September 18, 2006, Plaintiff saw Richard Engeln, Ph.D., for a psychological evaluation. On mental status examination, Plaintiff was alert and oriented and emphasized physical distress. Intellectual measurements showed verbal intelligence in the mid-borderline range and visual intelligence high in the low-average range. Her working memory was measured as low-average. Plaintiff's auditory memory scores appeared to be underestimates of her actual ability and reflected attitudinal-emotional issues. Plaintiff tended to shut down and feel overwhelmed when multiple units of information were presented at one time. AR 221-223.

Dr. Engeln noted that Plaintiff described multiple medical problems and trouble walking, standing and remembering. She presented with no evidence of any mental or emotional illness and emphasized medical problems. He diagnosed adjustment disorder of adulthood, with adjustment to medical-physical issues. She appeared mentally competent to manage funds. Verbally, cognitively and socially, Plaintiff was capable of job adjustment in a context where

instructions are multidimensional and independence is demanded.  Concentration and social skills were adequate for work adjustment.  AR 224.

On October 6, 2006, State Agency physician G.K. Ikawa, M.D,. completed a Psychiatric Review Technique form.  He opined that Plaintiff had a mild limitation in activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace.  AR 231-241.

Plaintiff was seen in the emergency room on January 30, 2007, for chronic leg swelling.  On examination, she had soft tissue tenderness and swelling, as well as an abrasion.  Plaintiff was diagnosed with cellulitis of the bilateral ankles and given medication.  AR 247-248.

Plaintiff had x-rays of her left ankle taken on January 31, 2007.  The x-rays revealed some increased density of the soft tissues of the left distal calf which may be focal areas of calcification.  A soft tissue ulcer was seen.  AR 251.  An x-ray of the right tibia/fibula taken the same day was normal.  AR 252.

On February 2, 2007, Plaintiff returned to the emergency room for expanding cellulitis.  Plaintiff's pain had not improved and she had redness and swelling in her left lower extremity.  An additional medication was added and Plaintiff was instructed to rest, elevate her leg and return in two days.  AR 246.

Plaintiff returned to the emergency room on February 4, 2007.  She was diagnosed with "slowly healing lower leg swelling" and cellulitis.  She was instructed to continue her medication and stay off her feet.  AR 245.

On February 6, 2007, Plaintiff returned to the emergency room.  She was instructed to continue with antibiotics, a warm compress and elevation.  AR 244.

Plaintiff returned to the emergency room on February 9, 2007, for follow-up.  Plaintiff reported that her cellulitis was finally starting to heal.  She was instructed to continue the antibiotic for one more week.  AR 279.

On August 2, 2007, Plaintiff was treated for hypertension and numbness in her upper extremities.  AR 275-276.

Plaintiff sought treatment on December 28, 2007, for restless leg syndrome, hypertension, headaches and stomach pain. Plaintiff indicated that she still had stomach pain, though it was better with pain medication. She was also sleeping better. Examination of her lower extremities revealed no pedal edema and distal pulses of 2+. Plaintiff ran out of her hypertension medication that day and it was therefore uncontrolled "due to non-compliance." She was also diagnosed with chronic headaches of unclear etiology and restless leg syndrome. Plaintiff was instructed to continue her medications. AR 274.

Plaintiff was also treated at Fresno City College by Robert Bates, a Ph.D. candidate, from November 2007 through May 2008. Mr. Bates opined that Plaintiff's intelligence level was average, as was her ability to understand, remember and carry out simple, and technical, instructions. Plaintiff's ability to deal with the public was average, but somewhat limited by her low self-esteem and anxiety. AR 282-283.

On April 23, 2008, Plaintiff told Mr. Bates that she had found a non-paying internship accounting position with the City of Fresno. Plaintiff reported that this lifted her self-esteem and that could see the light at the end of the tunnel because she felt that she was going to graduate next month and would then be in a better place to find paying employment. Plaintiff also reported that she had been prescribed Lexapro for her anxiety and that it had been helping. Plaintiff placed her depression at a 5 on a scale of 1 to 10. AR 284.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of cerebral atrophy, venous stasis, anxiety disorder (not otherwise specified) and chronic headache of unclear etiology. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, with simple, repetitive tasks and no public contact. Based on the testimony of the VE, the ALJ concluded that Plaintiff could perform a significant number of positions in the national economy. AR 15-19.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (cerebral atrophy, venous stasis, anxiety disorder (not otherwise specified) and chronic headache of unclear etiology) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could not perform her past relevant work; but (5) retains the RFC to perform a significant number of jobs. AR 15-19.

Here, Plaintiff contends that the ALJ (1) erred by not including the treating physician's finding that she needed to elevate her legs in the RFC determination; and (2) erred in finding her not credible.

**DISCUSSION**

A.   RFC Finding

Plaintiff first argues that the ALJ erred by failing to include her "treating physician's" finding that she needed to elevate her legs in the RFC determination.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.' " Robbins v. Soc. Sec'y Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff correctly notes that the opinion of a treating source should be given more weight than the opinions of doctors who do not treat a claimant. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998); Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. Even if the

1  treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion
2  without providing "specific and legitimate reasons" supported by substantial evidence in the
3  record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).

4  Here, however, Plaintiff cites treatment notes from a series of emergency room visits
5  from January 30, 2006, to February 9, 2007.  Such care does not rise to the level of a treating
6  source relationship.  A treating source must provide a claimant with medical treatment or
7  evaluation and must have an ongoing treatment relationship.  The evidence must establish that
8  the claimant saw the source with a frequency consistent with accepted medical practice for the
9  type of treatment and/or evaluation required for the claimant's medical condition.  20 C.F.R. §
10 404.1502.

11 The emergency room treating source did not establish the type of ongoing treatment
12 relationship required for qualification as a treating source in the context of Social Security law[2].
13 Moreover, the recommendation that Plaintiff elevate her legs was given in the context of healing
14 her cellulitis, rather than as a restriction for work activity.  The evidence also shows that on
15 February 9, 2007, her last emergency room visit, her cellulitis was starting to heal.  There was no
16 further recommendation that she continue to elevate her legs, nor was there any subsequent
17 instruction that she elevate her legs.  In fact, Plaintiff was seen only twice for physical issues
18 after February 9, 2007, and neither visit involved cellulitis or a recommendation that she elevate
19 her legs.  AR 274-276.

20 Plaintiff's argument is therefore without merit.  The ALJ's omission of a requirement that
21 Plaintiff elevate her legs is supported by substantial evidence and free of legal error.

22 B.     Plaintiff's Credibility

23 Plaintiff next argues that the ALJ failed to set forth adequate reasons for rejecting
24 Plaintiff's testimony.

---

[2] It is unclear whether the same source treated Plaintiff over her 10 days of treatment.

In <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See* <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" <u>Morgan</u>, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." <u>Id.</u> Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." <u>Id.</u>
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see* <u>Daniels v. Apfel,</u> 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." <u>Fair</u>, 885 F.2d at 603; *see also* <u>Thomas</u>, 278 F.3d at 958-59.

Plaintiff argues that the record is "void of any sufficient rationale at all as to why the ALJ ignored and disregards" Plaintiff's testimony. A review of the decision, however, reveals valid reasons for finding Plaintiff not credible.

The ALJ first explained that despite Plaintiff's allegations of constant pain, she was not receiving treatment consistent with such a claim. For example, the ALJ noted that Plaintiff has not used biofeedback, acupuncture or a TENS unit, and she has not participated in physical therapy or attended a pain management clinic. The ALJ also noted that surgery has never been recommended. AR 18. <u>Parra v. Astrue</u>, 481 F.3d 742, 750 (9th Cir. 2007) (evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995).

The ALJ next explained that there was "evidence that the claimant had not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged." AR 18. The ALJ also noted that Plaintiff

"cancelled or failed to show up for doctor appointments on a number of occasions." AR 18. While the ALJ is considered to consider a claimant's failure to follow prescribed treatment, the Court questions whether it was proper here. There is only one indication that Plaintiff failed to take her medication, and the note indicates that she ran out of medication on the day of her appointment. AR 274. Similarly, Plaintiff missed four appointments in just over two years. AR 205, 264, 294-295. These patterns do not display the type of apathy that would suggest that a claimant's symptoms are not as serious as alleged. The ALJ therefore erred in citing Plaintiff's failure to follow treatment and failure to attend appointments. However, one incorrect reason does not invalidate the credibility analysis. *Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

Finally, the ALJ next explains that Plaintiff's "desire to finish college" is not consistent with her allegations of difficulty concentrating.

> In February 2008, she reported that she was keeping up with her schoolwork in accounting and spending most of the day at the college library or in class. She was looking forward to getting a paid internship in accounting as well as graduating in the Spring of 2008. In April 2008, she found an internship placement for her accounting degree.

AR 18.

As the ALJ explains, the most recent treatment notes indicate that Plaintiff was expecting to graduate in a month, had found an internship position and was generally feeling positive. AR 284. While it is true that Plaintiff cannot be punished for trying to "improve her lot in life and educate herself," Plaintiff's belief that she could perform an internship position in accounting and would be graduating directly contradicts her testimony, less than one month later, that she had constant pain in her head and could not concentrate for more than 15 minutes at a time. Opening Brief, 9. The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

The ALJ's credibility analysis is supported by substantial evidence and is free of legal error.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Lisa Leaym.


IT IS SO ORDERED.

Dated:   **October 20, 2010**            **/s/ Dennis L. Beck**
                                         UNITED STATES MAGISTRATE JUDGE